48 F.3d 1224
 1995-1 Trade Cases P 70,854
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
NORTHWEST TITLE AND ESCROW CORP., a Minnesota corporation, Appellant,
v.
EDINA REALTY, INC.; Equity Title Services, Inc.;
Metropolitan Financial Corporation; Burnet
Realty, Inc., Appellees.
Coldwell Banker Residential Holding Company; Coldwell
Banker Residential Real Estate; Coldwell Banker
Residential Affiliates, Inc.; Guardian
Title Services Co., Defendants.
 No. 94-1118.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: Oct. 13, 1994.
Filed: Jan. 6, 1995.
 
 Before McMILLIAN, Circuit Judge, LAY, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 PER CURIAM.
 
 
 1
 Northwest Title & Escrow Corp. ("Northwest Title") brought this action against three separate defendant groups asserting claims under Sections 1 and 2 of the Sherman Act, state antitrust laws, and state common law. Each of the three defendant groups moved to dismiss all counts of Northwest Title's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted the motion and dismissed Count 1 without prejudice, Counts 2-5 with prejudice, and Counts 6-8 because the court declined to exercise supplemental jurisdiction. Northwest Title & Escrow Corp. v. Edina Realty, No. 3-93-436 (D. Minn. filed December 13, 1993) (Memorandum and Order). This appeal followed. For the reasons discussed below, we affirm the judgment of the district court.
 
 
 2
 Northwest Title sells residential title insurance and provides settlement services throughout Minnesota. Defendants Equity Title Services ("Equity Title") and Burnet Realty ("Burnet") also provide settlement services and sell title insurance in Minnesota. Equity Title is a subsidiary of defendant Metropolitan Financial Corp., which also owns defendant Edina Realty, a real estate brokerage firm that has contractual relationships with numerous real estate agents. Burnet is also a real estate brokerage firm with contractual relationships with numerous agents. The third defendant group, Coldwell Banker and its affiliates, was not a party to this appeal.
 
 
 3
 Northwest Title alleged that defendants' use of coercion to channel title insurance business to the respective broker's title insurance company was a per se violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. Secs. 2607-2608, and Section 1 of the Sherman Act, 15 U.S.C. Secs. 1-2. Northwest Title claimed that through a deliberate marketing strategy, defendants had a scheme to leverage market share in the primary market of real estate listings and sales into market share in the title insurance market. Northwest Title further alleged that since 1986, defendants have engaged in conspiracies, such as unlawful boycotts of competing title insurance companies, to violate RESPA and that it was a corporate policy of defendants to require their real estate agents to refer the ancillary title insurance and settlement services from real estate sales to affiliated entities. Furthermore, Northwest Title claimed that affirmative misrepresentation and direct coercion were employed by defendants to insure adherence to the mandatory plans. Northwest Title claimed that defendants' sales agents and managers received bonuses, generous commission splits and other compensation for referring business to their respective settlement service providers, which were paid by earnings from those same providers. In addition, Northwest Title asserted that defendants provided financial rewards and applied coercion to independent real estate agents to direct settlement and title insurance business to their respective settlement service providers. Northwest Title also alleged that the defendants violated Section 2 of the Sherman Act by attempting and conspiring to monopolize the sale of residential real estate title insurance in the Twin Cities metropolitan area.
 
 
 4
 In Counts 2 and 3, Northwest Title alleged that violations of RESPA were a per se violation of Sec. 1 of the Sherman Act. It argues on appeal that RESPA was specifically designed to eliminate anticompetitive activities in the real estate industry and that one of the reasons RESPA was passed was to prevent the use of kickbacks from title insurers to agents in exchange for referrals of settlement business. In Northwest Title's view, a violation of RESPA is an unreasonable restraint of trade because of the nature of the wrongful conduct. Northwest Title does not argue the dismissal of Count 4, a price-fixing claim, on this appeal.
 
 
 5
 Defendants respond that Northwest Title invoked RESPA in an attempt to use the antitrust laws to circumvent those RESPA provisions which plainly prohibited competitors from suing for a RESPA violation. Defendants argue the district court was correct in dismissing Counts Two and Three with prejudice because Northwest Title lacked standing to sue under RESPA and because a violation of RESPA does not constitute a per se violation of Sec. 1 of the Sherman Act. We agree with the district court that the statute limited the class of persons with a cause of action under RESPA to purchasers of title insurance and that it is the consumers, not the competitors, who are protected under RESPA.
 
 
 6
 Northwest Title also argues it should have been given the opportunity to amend the complaint in order to define with more clarity the relevant market in its monopolization claim (Count 5). It maintains that there can be monopolization in an aftermarket even if there is competition in the primary market. See Eastman Kodak Co. v. Image Technical Services, 112 S. Ct. 2072 (1992). Northwest Title argues that while there may be competition in the primary real estate market, defendants violated Sec. 2 of the Sherman Act in the aftermarkets of title insurance and settling services.
 
 
 7
 Defendants argue that a basic requirement for Sec. 2 claims is a single force which has monopoly power or has a dangerous probability of success in an attempt to monopolize in a relevant market. Defendants emphasize that in Count 5, Northwest Title did not refer to any of the specific defendants or defendant groups. It only used the term "defendants." The district court noted that Northwest Title admitted that it was not alleging a horizontal conspiracy among the three defendant groups. The district court therefore reasoned that if there were three separate competitors and each had significant market power, there would be no dangerous probability of any one of them attaining monopoly power. We agree.
 
 
 8
 Having carefully reviewed the record and the arguments set forth by all parties, we hold that the district court committed no error in its disposition of this matter. We therefore affirm the judgment of the district court. See 8th Cir. R. 47B.